UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Laura Obergefell,                            Case No. 3:20-cv-2579

          Plaintiff,

    v.                                  MEMORANDUM OPINION
                                           AND ORDER

Firelands Regional Medical Center, *et al.*,

          Defendants.

## I. INTRODUCTION AND BACKGROUND

Plaintiff Laura Obergefell filed suit against her former employer, Firelands Regional Medical Center ("FRMC"), and seven individuals who are employed by FRMC (Tonia M. Copsey, Jenna Molnar, Patty Martin, Denise Parrish, Jody Meisler-McKillips, Robert M. Moore, and Jeremy Normington-Slay), alleging her termination was discriminatory and violated state and federal law. (Doc. No. 1). The parties in this case have filed several discovery-related motions. Defendants filed two motions for protective orders. (Doc. Nos. 41 and 49). Obergefell opposed those motions. (Doc. Nos. 44 and 61). I subsequently referred both motions and other pending discovery disputes to United States Magistrate Judge Darrell A. Clay for disposition. (*See* non-document orders dated August 2 and August 4, 2022).

Following that referral, Judge Clay held a status conference on September 7, 2022, during which he heard arguments from counsel regarding these disputes and the motions. The parties also made additional submissions after that conference, pursuant to Judge Clay's instruction.

Judge Clay granted Defendants' first motion in part and denied it in part, ("First Protective Order"), (*see* Doc. No. 73, ruling on Doc. No. 41), and granted Defendants' second motion ("Second Protective Order"). (*See* Doc. No. 71, ruling on Doc. No. 49). Judge Clay also granted Obergefell's request for a continued deposition of Copsey while denying her request for a further forensic analysis of Copsey's cell phone (the "Copsey Order"). (Doc. No. 77). Obergefell filed objections to the Second Protective Order. (Doc. No. 76). She also objected to Judge Clay's denial of her request for further forensic analysis of Copsey's cell phone in the Copsey Order. (Doc. No. 80).

Obergefell then filed a motion to compel the forensic analysis as well as production of FRMC's "accounting of how it spent the millions of dollars in COVID-19 relief money that it received in 2020 and 2021 . . . ." (Doc. No. 81 at 1). Further, she seeks reimbursement of the cost of the forensic examination, payment of expenses incurred in taking Copsey's reconvened deposition, and attorney fees and costs related to filing her motion to compel. (*Id.* at 2). Defendants opposed the motion to compel. (Doc. No. 83).

For the reasons stated below, I overrule Obergefell's objections and deny her motion.

## II.     DISCUSSION

### A.    OBJECTIONS

Rule 72 provides that when nondispositive matters – such as discovery disputes – have been referred to a magistrate judge "to hear and decide," the district judge who made the referral "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lyngaas v. Ag*, 992 F.3d 412, 419 (6th Cir. 2021) (citations and internal quotation marks omitted). The district judge's "[r]eview under Rule 72(a)

2

provides considerable deference to the determinations of magistrate[ judges].*" Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 550 (S.D. Ohio 2014) (citations and internal quotation marks omitted).  *See also Bonasera v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 2:19-CV-3817, 2021 WL 1785618, at *1 (S.D. Ohio May 5, 2021) ("'In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.'") (quoting 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3069 (3d ed. 2020)).

### 1. Objections to First Protective Order

On March 18, 2022, Defendants filed a motion for a protective order concerning 76 sets of documents which Defendants asserted they were not required to produce in response to Obergefell's discovery requests because those documents are privileged.  (Doc. No. 41).  Judge Clay reviewed the documents in question and the parties' briefing, and he also heard oral argument from counsel during the September 7, 2022 status conference.  He then granted the motion in part and denied it in part, concluding that most of the documents were protected by the work product privilege and the attorney-client privilege.  Judge Clay ordered the Defendants to "produce to Mrs. Obergefell the following documents: PRIV-FRMC-053, -243, -259, -260, -261, and -262.  All other documents at issue are made subject to a protective order exempting them from having to be disclosed to Mrs. Obergefell."  (Doc. No. 73 at 4).

In reaching this conclusion with respect to the exempted documents, Judge Clay rejected Obergefell's arguments that: (1) the attorney-client privilege was waived for some documents because the materials allegedly were shared with non-clients; (2) the attorney-client privilege was waived for some communications because no attorneys were involved in the communications or third parties were involved; (3) Defendants had not met their burden to show at least some of the documents were privileged; and (4) the attorney-client privilege does not apply to communications

3

involving in-house counsel because those communications involved business-related matters rather than legal matters. (*Id.* at 7-18).

Obergefell filed objections to Judge Clay's rulings. (Doc. No. 76). In those objections, she relies on many of the same arguments Judge Clay rejected. She also asserts Judge Clay "overlooked" two requests she made in her brief in opposition to Defendants' motion for the First Protective Order and that, therefore, I should grant those requests. I do not find Obergefell's objections to be persuasive and overrule them.

  **i.**   **"Overlooked" requests**

Obergefell first asserts that Judge Clay erred by failing to grant her request for a revised privilege log that provided additional information about Defendants' claims of privilege and any non-privileged facts contained in those documents. (Doc. No. 76 at 6-7). But Obergefell fails to show what purpose a revised privilege log would serve at this juncture in the case. Ostensibly, a privilege log provides an opportunity for counsel to work through the issue of whether certain documents and communications are discoverable.

But the parties' inability to resolve their discovery dispute led to my, and subsequently Judge Clay's, intervention in these matters. Judge Clay conducted an extensive and thorough review of the challenged documents and ruled on whether those documents were privileged or whether they must be disclosed. Ordering Defendants to repeat the intermediate step of producing the privilege log when Judge Clay already reviewed the challenged documents would serve no useful purpose. Therefore, I deny Obergefell's request for a revised privilege log.

Next, Obergefell claims Judge Clay failed to mandate that Defendants comply with my order requiring them to file "the disputed documents . . . under seal for an *in camera* review." (Doc. No. 39 at 2). According to Obergefell, Defendants violated this order when counsel for the Defendants

4

acknowledged that counsel did not submit certain identified documents for *in camera* review. (Doc. No. 76 at 7-8) (quoting Doc. No. 41 at 4-5 n.1).

Defense counsel explained they did not consider these documents to be in dispute because "none of the individuals are outside the attorney-client relationship and the documents have not otherwise been challenged." (Doc. No. 41 at 4-5 n.1). In their acknowledgement, defense counsel specifically identified the individuals included on the withheld communications. While Obergefell argues Defendants violated my order by failing to submit these documents, she does not explain why. She had the opportunity to do more than simply claim Defendants' "explanation is not persuasive," (Doc. No. 76 at 8), but she did not. I conclude she fails to show these documents are actually in dispute and deny her request to compel production of these documents.

### ii. Communications with in-house counsel in the role as counsel[1]

Judge Clay reviewed the documents and communications within this category before granting "Defendants' request for a protective order relieving [them] from having to produce any of the documents in this category . . . as to all documents except PRIV-FRMC-053, -259, -260, -261, and -262, each of which I order the Firelands Defendants to produce to Mrs. Obergefell." (Doc. No. 73 at 16) (emphasis removed). Obergefell objected to Judge Clay's decision, arguing he applied the wrong standard and that Defendants failed to meet their burden of proof. (Doc. No. 76 at 8-11). Obergefell's objections are not persuasive.

First, Obergefell asserts Judge Clay did not apply the correct standard. Judge Clay stated: "Courts have noted that where ""in-house counsel appears as one of many recipients of an otherwise business-related memo, the federal courts place a heavy burden on the proponent to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects

---

[1] The parties used, and Judge Clay adopted, certain terminology for the five categories of disputed documents. (*See* Doc. No. 73 at 6). I also employ those same categories.

5

legal, as opposed to business, advice.'"" (Doc. No. 73 at 13) (quoting *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *21 (S.D. Ohio Nov. 13, 2012) (further quoting *Amway Corp. v. Procter & Gamble Co.*, No. 1:98–cv–726, 2001 WL 1818698, at *5 (W.D. Mich. April 3, 2001))). Obergefell argues Judge Clay should have relied on more recent case law, which offers the following framework:

> [W]hen a communication involves both legal and non-legal matters, a court must "consider whether the predominant purpose of the communication is to render or solicit legal advice." This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."

(Doc. No. 76 at 9) (quoting *McNeil v. Mount Carmel Health Sys.*, No. 2:20-CV-258, 2021 WL 5235103, at *6 (S.D. Ohio Nov. 10, 2021) (further quoting *Alomari v. Ohio Dep't of Pub. Safety,* 626 F. App'x 558, 570 (6th Cir. 2015) (further quotation omitted))).

But Obergefell's argument ignores a crucial step. The analytical framework described in *McNeil* and other cases applies only when "a communication involves both legal and non-legal matters." *McNeil*, 2021 WL 5235103, at *6. Judge Clay reviewed the communications themselves and explicitly concluded "none of the communications in this category can reasonably be said to have any 'business related' content. Rather, each deals entirely and exclusively with Mrs. Obergefell's claims in this matter, with in-house counsel acting as counsel, rather than a business advisor." (Doc. No. 73 at 14). In other words, there was no reason to conduct the "predominant purpose" analysis, because the communications had only one purpose. Therefore, I overrule Obergefell's objections to Judge Clay's ruling on this category of documents.

   **iii. Communications with EPLI Insurer**

Judge Clay reviewed documents containing communications with FRMC's employment practices liability insurance ("EPLI") carrier and concluded those documents are not discoverable

6

because they were created in anticipation of litigation or otherwise covered by the attorney-client privilege. (Doc. No. 73 at 16-17). Obergefell offers two objections.

Obergefell's first objection, in counsel's words, is that:

> Although in their Motion for Protective Order, Defendants argued that these documents were protected by both the work product doctrine and the attorney-client privilege, the Magistrate Judge only analyzed Defendants' attorney-client privilege claims. But the Magistrate Judge did not rely on the cases cited by Defendants. Instead, the Magistrate Judge improperly went to bat for the Defendants by using two "see" citations . . . ."

(Doc. No. 76 at 12).

Obergefell's objection is baseless. She does not cite to a single point of authority which might suggest a judge may not conduct independent research into the issues brought before the court. To the contrary, the exact opposite is well-established. For instance, the Fifth Circuit has held: "Some of our precedents have evaluated authority not cited in [the] district court without suggesting a need to overcome some barrier to doing so. . . . <u>Certainly, this court is not restricted to analyzing the issues properly presented only on the authorities cited by the parties</u>." *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (citing *Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 589-90 (5th Cir. 2018)) (emphasis added).

Courts within the Sixth Circuit have repeatedly embraced the same stance, recognizing a court's responsibility to independently research the issues of law raised by the parties before them. *See, e.g., Wong v. PartyGaming Ltd.*, 589 F.3d 821, 831 (6th Cir. 2009) ("To begin with, plaintiffs have not cited to any case law which requires the district court to make specific findings on the issue, <u>nor have we found any</u>.") (emphasis added); *Parrish v. Ford Motor Co.*, 909 F.2d 1484, at *6 (6th Cir. 1990) (unpublished table decision) (rejecting plaintiff's argument because plaintiff had "not cited, nor have we found, any case applying this presumption in the context of intracorporate communication"). Obergefell fails to show Judge Clay committed any error in performing independent research into the issues the parties raised and, therefore, I overrule this objection.

Next, Obergefell objects to Judge Clay's decision because he did not conduct the predominant-purpose inquiry. She argues "[t]he facts and circumstances under which these communications were made, and the limited information which Defendants provided regarding the information contained in these emails are much more akin to business communications rather than disclosures necessary to obtain legal advice." (Doc. No. 76 at 12).

But Obergefell's contention does not show Judge Clay's rulings were clearly erroneous. Instead, she merely offers her disagreement with those rulings based upon "the limited information" she has about the documents in question. While I hesitate to restate what otherwise may be obvious, Obergefell has had no access to the documents themselves. By contrast, Judge Clay reviewed the actual documents and thus had the benefit of the full content of those communications before reaching the conclusion that those documents contain privileged legal advice rather than business communications. Obergefell's objection to Judge Clay's determination that those documents are privileged lacks merit, and I overrule it.

  **iv.**   **Communications between FRMC Employees and Third-Party Administrators at the Direction of Counsel**

The final category of documents Obergefell discusses in her objections concerns email exchanges between an FRMC employee and two employees at the Ohio Hospital Association, FRMC's third-party administrator. Judge Clay reviewed these communications and concluded they are protected from disclosure by the attorney work product doctrine, because "[t]he questioned messages specifically indicate that information is being gathered in response to Mrs. Obergefell having filed suit against the Firelands Defendants." (Doc. No. 73 at 18).

Obergefell objects to this conclusion. She first argues Judge Clay erred by not citing to any case law in this section of his opinion. (Doc. No. 76 at 13). But Judge Clay provided a full and accurate description of the attorney work product doctrine earlier in his opinion. (*See* Doc. No. 73

8

at 7-8). Obergefell fails to show Judge Clay's decision was clearly erroneous merely because he did not repeat these citations in a later part of his opinion. I overrule this objection.

Next, Obergefell again asserts "[t]he facts and circumstances under which these communications were made, and the limited information which Defendants provided regarding the information contained in these emails are much more akin to business communications rather than disclosures necessary to obtain legal advice." (Doc. No. 76 at 13). For the reasons I described in the section immediately prior to this section, this objection lacks merit, and I overrule it.

### 2.     **Objections to Copsey Order**

Obergefell also has filed objections to Judge Clay's ruling on her requests to reconvene Copsey's deposition and for certain relief concerning a forensic evaluation of Copsey's cell phone.

Copsey, one of the named Defendants in this litigation, is Obergefell's former supervisor at FRMC. Obergefell alleges Copsey made the decision to terminate Obergefell based upon her age, that FRMC agreed with or adopted Copsey's decision, and that the other individual Defendants aided and abetted Copsey's decision. (*See* Doc. No. 1 at 11-14). Copsey was deposed on August 31, 2021. Excluding breaks, the deposition lasted a total of three hours and forty-two minutes. (Doc. No. 77 at 2). At the end of the August 31 deposition,[2] Plaintiff's counsel indicated he would need some additional time to ask Copsey some additional questions. (*Id.*). Counsel agreed to reconvene Copsey's deposition the next day for two hours. (*See* Doc. No. 52 at 183-84) (filed under seal). The parties ultimately did not reconvene Copsey's deposition the next day.

Obergefell subsequently requested that she be permitted to reconvene Copsey's deposition, for an additional six hours. (*See* Doc. No. 77 at 9). Judge Clay ruled that Copsey's reconvened deposition could last no more than three hours and eighteen minutes, the balance of the seven-hour

---

[2] Prior to the deposition, the parties agreed that the deposition would conclude for the day no later than 3:00 p.m., because Copsey had work-related obligations. (Doc. No. 36 at 3) (filed under seal).

9

deposition time period permitted by Rule 37. (*Id.*). Copsey's deposition was reconvened on December 12, 2022. (*See* Doc. No. 80 at 2).

After Copsey's initial deposition, Obergefell sought to conduct a forensic examination of Copsey's cell phone, believing that her phone contained discoverable text messages which had not been produced. Copsey agreed to provide her cell phone to a mutually agreed upon forensic examiner, Vestige Digital Investigations, for a data extraction. (*See* Doc. No. 77 at 2-6). I previously ruled that Obergefell would be responsible for paying for the data extraction unless the investigation revealed discoverable information which had not been produced. (*Id.* at 4).

Some time passed with the parties unable to agree upon search terms or where and when the data extraction – estimated to take a few hours – would take place. I declined to order Copsey to drive her phone to Vestige's office or to provide it to a third-party for transportation and, subsequently, on March 30, 2022, a Vestige employee traveled to FRMC to conduct the data extraction. (*Id.* at 5). After approximately four hours, the Vestige employee determined there were more messages than anticipated and estimated he would need another twenty to twenty-four hours to complete the extraction. (*Id.*). Defense counsel instructed Vestige to discontinue the data extraction as a result of the substantially increased timeframe. Both parties contacted my chambers the next day. Obergefell requested that I order the data extraction to resume and also order Copsey to pay half of the fee as a sanction for terminating the extraction, while Copsey asked that I order that no further extraction would occur. (*Id.* at 5-6).

I referred this dispute to Judge Clay. Obergefell again requested that the data extraction resume and that Copsey be required to pay the full fee for the examination. (*Id.* at 6). Judge Clay noted that neither Obergefell nor Copsey was at fault for the change in timeframe, as both reasonably relied upon Vestige's estimate for the work. (*Id.* at 10). Judge Clay declined to order Copsey to turn over her phone for a continued extraction, rejecting Obergefell's assertion that she

10

"'know[s]' from working with Mrs. Copsey that she sends text messages to people all the time and speculated as to the existence of text messages that might fill perceived gaps in communication between emails." (*Id.* at 11). He also declined to order Copsey to reimburse her for the data extraction, noting I expressly had declined to do so unless the examination turned up discoverable but undisclosed evidence.

In rejecting Obergefell's request for a continued extraction, Judge Clay noted Obergefell had not produced any actual evidence to support her belief that such undisclosed evidence exists. (*Id.*). Obergefell now claims to have that evidence, in the form of Copsey's responses during her reconvened deposition. (Doc. No. 80 at 2). Obergefell claims Copsey admitted that she found "responsive" text messages, despite the fact that she previously represented she did not have any. (*Id.*). Obergefell goes on to claim Copsey was "dishonest" in her initial representation and accuses defense counsel of attempting to cover up Copsey's dishonesty. (*Id.*).

But Obergefell unfairly characterizes Copsey's deposition answers. To be sure, Copsey stated she sent some unknown number of responsive messages to defense counsel after conducting a search of her text messages. (Doc. No. 80-1 at 55-56). But, viewed in context, it is clear that by "responsive," Copsey meant messages that contained any of the names identified in Obergefell's discovery request,[3] "plus lawsuit, deposition, etc., and whatever came up, I provided" to defense counsel. (*Id.* at 50-53, 55-56).

Further, as Copsey notes, it is defense counsel's responsibility to determine whether the messages contained discoverable information, rather than merely containing one or more relevant

---

[3] Obergefell's discovery request "sought all emails and text messages sent by and between Copsey and seven individuals regarding: a) the decision to eliminate Plaintiff's Nurse Practitioner position; b) the decision to terminate Plaintiff's employment; c) Plaintiff's EEOC charge; d) Plaintiff's lawsuit; e) Plaintiff's interrogatories and request for production of documents; f) Plaintiff's depositions; or g) Plaintiff's attorney, Peter K. Newman." (Doc. No. 83 at 3-4, n.2).

11

search terms. (Doc. No. 83 at 2-3). Copsey's deposition responses do not show dishonesty; rather, they demonstrate the difference in the litigation roles of parties/witnesses and attorneys.

Moreover, I see no issue with defense counsel's decision to stop the data extraction after four hours, particularly in the face of Vestige's revised estimate that the extraction would take twenty to twenty-four hours longer than anticipated. Copsey's earlier acquiescence to the forensic examination, and my order related to that examination, were premised on Vestige's representations of minimal inconvenience to Copsey. Those representations ultimately went unrealized, and I decline to order the substantially-more invasive conditions now proposed by Vestige.

In an apparent attempt to put an end to this dispute, Copsey has offered to produce the relevant text messages for *in camera* review. (*Id.* at 3). I accept her offer and order her to file those messages under seal within seven days of the date of this Memorandum Opinion and Order. Further, I deny Obergefell's request for a continued forensic examination of Copsey's cell phone.

As I have repeatedly stated through this extended discovery dispute, Obergefell is responsible for the cost of the data extraction unless that process uncovers discoverable but undisclosed information. It has not done so, and therefore I deny her demand for reimbursement. I will review the disputed messages once they are filed and, if warranted, I will reconsider this matter.

Finally, to the extent they have not already been resolved, I overrule Obergefell's objections to the Copsey Order.

### B. MOTION TO COMPEL

Obergefell also filed a motion to compel, seeking an order requiring:

(1) the production of Tonia Copsey's text messages which Copsey identified as responsive to Plaintiff's First Request For Production of Documents Propounded Upon her; (2) the completion of the forensic examination of Copsey's cell phone; and (3) the production of the 6 of 8 pages of documents which are responsive to Plaintiff's [Freedom of Information Act ("FOIA")] request to the Department of Health and Human Services for FRMC's accounting of how it spent the millions of

        dollars in COVID-19 relief money that it received in 2020 and 2021 regarding which FRMC and defense counsel has objected.

(Doc. No. 81 at 1).

        I already have resolved the first two bases for Obergefell's motion. Therefore, I deny this part of her motion to compel.

        Obergefell argues she is entitled to the requested Covid-19 relief fund documentation because it "is relevant to her argument that FRMC's articulated reason for terminating her – she was selected to be terminated as part of an alleged reduction in force ("RIF") due to financial problems caused by the Covid-19 pandemic – is a pretext for age discrimination." (Doc. No. 81 at 19). She further contends she "can use how FRMC spent the COVID-19 relief money it received to . . . challenge the reasonableness of FRMC's business judgment in deciding to terminate her employment." (*Id.* at 22-23). Defendants argue this information is not relevant and discoverable because evidence which might show Defendants "could have made different business decisions is not probative to Obergefell's assertion the FRMC's RIF did not actually motivate her termination." (Doc. No. 83 at 4).

        Obergefell claims she "was forced to submit a FOIA request for FRMC's accounting of how it spent the COVID-19 relief funds it received because she could not obtain this information either through the depositions of FRMC's senior management or through a request for production of documents." (Doc. No. 81 at 20). Defendants claim Obergefell did not request its federal accounting submission from FRMC before submitting the FOIA request, though they acknowledge Obergefell requested "'any and all documents regarding how FRMC spent the Covid-19 relief funds it received.'" (Doc. No. 83 at 4).

13

It is unclear to me when and how this dispute arose and what actions the parties have undertaken to resolve it.[4]  Within seven days of the date of this Memorandum Opinion and Order, the parties shall file their respective position statements concerning this dispute.  The parties are granted leave to file these statements under seal.  Obergefell shall: (1) address when she first sought an accounting of how the Covid-19 relief funds were spent; (2) provide specific deposition citations for any questions and answers regarding this topic; and (3) detail any other steps she took to obtain this information before pursing the FOIA request and filing the motion to compel.  Defendants shall: (1) provide the dates on which they applied for, and received, any Covid-19 relief funds; (2) indicate what documents were produced in response to Obergefell's request for the production of documents related to the Covid-19 relief funds; and (3) state whether, and when, any Covid-19 relief funds were used for payroll.  Both parties also shall discuss any other reason why this information is or is not discoverable.

I conclude this portion of the motion to compel is premature and deny it on that basis.

C.   **MOTIONS FOR SANCTIONS**

Obergefell filed several requests for sanctions against Defendants and their attorneys, including requests for costs and attorney fees.  (*See, e.g.,* Doc. No. 80 at 12; Doc. No. 81 at 25-30).

In one request, Obergefell contends Copsey and defense counsel should be forced to pay for Copsey's reconvened deposition.  (Doc. No. 81 at 2).  But the deposition was reconvened because Plaintiff's counsel was unable to ask all of his questions during the allotted time.  (*See* Doc. No. 77 at

---

[4]  While Defendants argue "evidence that FRMC could have made different business decisions is not probative to Obergefell's assertion [that] FRMC's RIF did not actually motivate her termination," (Doc. No. 83 at 4), it is hypothetically possible that FRMC used Covid-19 relief funds to retain other employees at the same time it terminated Obergefell and also hypothetically possible that such conduct might support an inference of pretext or otherwise might lead to the discovery of admissible evidence.  These, of course, are hypotheticals.  But I am unable to reach a more definite conclusion because the record does not contain sufficient information.  Therefore, this circumstance is unlike the construction contract matter resolved by Judge Clay.

14

2) (calculating that, of the 6 hours and 10 minutes that passed between the beginning of Copsey's August 31, 2021 deposition and its conclusion, counsel questioned Copsey for 3 hours and 42 minutes, while there were six breaks during the deposition lasting a total of 2 hours and 28 minutes). Obergefell has not attempted to make any showing that the delays were solely the fault of Copsey or defense counsel. Further, Obergefell has not made any connection between the need for a reconvened deposition and Defendants' allegedly deficient discovery production made <u>after Plaintiff's counsel stated on the record that he would need approximately two more hours to question Copsey</u>. Therefore, I reject this request.

The remainder of Obergefell's request for sanctions primarily are based on Plaintiff's counsel's allegations of dishonesty or other malicious intent when Defendants or defense counsel hold firm to a position with which Plaintiff's counsel disagrees. But time and again these allegations have proven meritless, as Defendants' positions have carried the day, or (as in the case of Copsey's testimony during her reconvened deposition) Plaintiff's counsel's allegations show themselves to be based upon an overzealous interpretation of the facts at issue. I strongly urge Plaintiff's counsel to reconsider whether this is a path on which he desires to continue in this litigation and warn him that further spurious allegations of misconduct against Defendants or their attorneys may ultimately subject Plaintiff's counsel, his client, or both, to sanctions.

### III. CONCLUSION

For the reasons stated above, I overrule Obergefell's objections to Judge Clay's orders, (Doc. Nos. 76 and 80), and deny her motion to compel. (Doc. No. 81). Within seven days of the date of this Memorandum Opinion and Order, the parties shall file their respective position statements as described above. The parties are granted leave to file these statements under seal. Further, within seven days, Defendants shall file the Copsey text messages for *in camera* review, as proposed by Defendants. No other documents (e.g., motions, position statements exceeding the scope I have described above, etc.) may be filed without leave of court.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
