UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Laura Obergefell,                              Case No. 3:20-cv-2579

        Plaintiff,

v.                                                MEMORANDUM OPINION
                                                                       AND ORDER

Firelands Regional Medical Center, *et al.*,

        Defendants.

## I. INTRODUCTION

Plaintiff Laura Obergefell has filed a motion to modify the Stipulated Protective Order previously entered in this case, (Doc. No. 19), to exclude "the severance agreements signed by the 14 other employees in the protected age class whom [Firelands Regional Medical Center] terminated along with her in 2020." (Doc. No. 103). Defendants Firelands Regional Medical Center ("FRMC"), Tonia M. Copsey, Jenna Molnar, Patty Martin, Denise Parrish, Jody Meisler-McKillips, Robert M. Moore, and Jeremy Normington-Slay filed a brief in opposition to Obergefell's motion. (Doc. No. 107). Obergefell filed a brief in reply. (Doc. No. 109). For the reasons stated below, I deny Obergefell's motion.

## II. BACKGROUND

On November 17, 2020, Obergefell filed suit against the Defendants, asserting Defendants discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA") and Ohio law. (Doc. No. 1). She also asserted several other state law

claims. (*Id.*). All of Obergefell's claims arise out of her termination in April 2020, allegedly as part of a reduction-in-force ("RIF") FRMC implemented in response to financial losses due to the Covid-19 pandemic.

On August 17, 2021, the parties filed a proposed stipulated protective order covering "[a]ll documents produced in the course of discovery, including initial disclosures, all responses to discovery requests, all deposition testimony and exhibits, other materials which may be subject to restrictions on disclosure for good cause, and information derived directly therefrom (hereinafter collectively 'documents')." (Doc. No. 18 at 1). I reviewed the parties' proposal and adopted it on August 19, 2021, as an Order (the "Stipulated Protective Order"). (Doc. No. 19).

The Stipulated Protective Order permits the party producing documents to designate those "documents as confidential and restricted in disclosure" if the party has made "a good faith determination that the documents contain information . . . that should be protected from disclosure as confidential personal information, . . . personnel records, or such other sensitive commercial information that is not publicly available." (Doc. No. 19 at 2-3). Documents designated as confidential may not "be used or disclosed by the parties[ or] counsel for the parties . . . for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action, including any appeal" and may not be disclosed to "any third person" except as provided in the Stipulated Protective Order. (*Id.* at 3-4).

The Stipulated Protective Order also provides a procedure by which "any party or non-party with standing to object" may challenge a confidentiality designation. (*Id.* at 6-7). The objecting party first must meet and confer with the designating party "in a good faith effort to resolve the objection by agreement." (*Id.* at 6). If that effort is unsuccessful, the objecting party may challenge the confidentiality designation "by motion under Local Rule 7.1 and any other procedures set forth in the presiding judges standing orders or other relevant orders." (*Id.* at 7).

FRMC asserts that, between April and June 2020, it terminated Obergefell and 20 other employees as part of an RIF designed to cut costs in response to financial pressures created by the Covid-19 pandemic. Among the documents Defendants produced in discovery were severance agreements entered into by FRMC and the other 20 former employees; Defendants designated these severance agreements as confidential and subject to the Stipulated Protective Order. According to information produced in discovery, at least 12 of the other former employees[1] were over the age of 40 and thus within the class of individuals protected by the ADEA.

On October 17, 2021, Obergefell's attorney, Peter Newman, contacted defense counsel to request that Defendants agree to remove the confidentiality designation from these agreements so that Mr. Newman could "contact these 12 former employees to discuss the possibility of their filing their own age discrimination claims against FRMC." (Doc. No. 17-3 at 1). Mr. Newman contended the ADEA waivers contained in the severance agreements were statutorily insufficient and that he was entitled to provide this information to those former employees. (*Id.*). On October 20, 2021, defense counsel responded via email and declined to agree to waive the confidentiality designation. (Doc. No. 107-4).

The issue then went dormant until June 2023. First, on June 23, 2023, Mr. Newman submitted a revised settlement demand in which he stated his intention to "use the information obtained in this case to file a class action on behalf of the other 14 employees in the protected age group who were terminated as part of FRMC's alleged 2020 RIF and were asked to sign invalid [Older Workers Benefit Protection Act ("OWBPA")] releases." (Doc. No. 107-5 at 2). Then, on June 26, 2023, Mr. Newman emailed defense counsel to again request that Defendants remove the

---

[1] In his initial communication, Mr. Newman references 12 former employees as being within the protected class while, in his subsequent communications, he asserts there are 14 former employees in the protected class. Defendants do not dispute that there are 14 former employees over the age of 40 who were terminated during the RIF.

3

confidentiality designation from the severance agreements signed by the other 14 employees. (Doc. No. 107-6). On June 30, 2023, defense counsel again declined to agree to waive the confidentiality designation. (Doc. No. 107-7). Obergefell filed her motion challenging the confidentiality designation on July 3, 2023.

### III. DISCUSSION

Rule 26 permits a district court to issue protective orders "for good cause." Fed. R. Civ. P. 26(c)(1). Similarly, district courts have the authority to modify protective orders "when circumstances so dictate." *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 118 (6th Cir. 1981). *See also Hochstein v. Microsoft Corp.*, No. 04-73071, 2008 WL 4387594, at *2 (E.D. Mich. Sept. 24, 2008) (citing cases for the proposition that a court may modify a protective order based upon good cause and noting "[t]he burden is especially high where the parties stipulate to the protective order").

In response to Obergefell's request for production of documents, FRMC represents it "produced hundreds of non-party personnel records, including the non-party severance agreements at issue in Obergefell's Motion" and that it designated those records as confidential and protected pursuant to Paragraph 3 of the Stipulated Protective Order. (Doc. No. 107 at 2).

Obergefell asserts she "is not seeking to modify the [Stipulated Protective Order] but, instead, to remove Defendants' confidentiality designation of the severance agreements that are in dispute." (Doc. No. 109 at 14). But this is a distinction without a difference. In order to prevail on her motion, Obergefell must show: (1) the documents were improperly designated as confidential; or (2) the scope of the Stipulated Protective Order must be curtailed to exempt the specific documents she seeks.

Obergefell does not contend that Defendants improperly designated the severance agreements as confidential before producing them; rather, she concedes "FRMC may have initially

had a valid reason for designating the severance agreements [as] confidential." (Doc. No. 109 at 13). Thus, she must demonstrate it is appropriate to modify the Stipulated Protective Order to prohibit its application to the severance agreements.

The genesis of the motion to remove the confidentiality designation is Mr. Newman's desire to contact the 14 former employees who signed the severance agreements to inform them that the OWBPA releases in the severance agreements may be invalid.[2] (*See* Doc. No. 103 at 4). Obergefell contends the confidentiality designation should be removed to prevent FRMC from using the Stipulated Protective Order "to shield [itself] from its potential age discrimination liability to the 14 employees . . . because this is beyond the scope of the [Stipulated Protective Order]." (*Id.* at 9). Obergefell continues:

> The parties' SPO specifically states that "[a]s there is a presumption in favor of open and public judicial proceedings in federal courts, this Order shall be strictly construed in favor of public disclosure and open proceedings whenever possible." Doc. No. 19 at PageID # 130. Because the parties did not agree to include a prohibition on Obergefell's counsel soliciting the 14 employees, [Defendants'] request that this Court read this prohibition into the parties' SPO must be denied.

(*Id.*).

Obergefell's argument is not persuasive. The Stipulated Protective Order expressly prohibits "counsel for the parties" from using documents designated as confidential "for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action." (Doc. No. 19 at 3). Obergefell's proposed use of the severance agreements falls squarely within this

---

[2] The OWBPA "imposes specific requirements for releases covering ADEA claims." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 424 (1998) (citing 29 U.S.C. §§ 626(f)(1)(B), (F), (G)). There are additional requirements which apply to waivers "requested in connection with an exit incentive or other employment termination program offered to a group or class of employees." 29 U.S.C. § 626(f)(1)(H). An OWBPA release which does not strictly comply with the statutory requirements is invalid and cannot be used to prevent an employee from pursuing an allegedly-waived ADEA claim. *Oubre*, 522 U.S. at 428. Obergefell contends the OWBPA releases are invalid because they contain the individual release and not the group release applicable to events like the RIF. (*See* Doc. No. 103 at 7).

prohibition. In practice, her "position would essentially require a district court not only to set forth the affirmative scope of a discovery order and any accompanying protective orders, but also expressly to enumerate each and every act prohibited by the orders even when such prohibited acts are obvious from the context of the litigation and the context in which the orders were issued." *Kaufman v. Am. Fam. Mut. Ins. Co.*, 601 F.3d 1088, 1092 (10th Cir. 2010). *See also id.* ("We have never required a district court to define the scope of its discovery orders with such specificity, and we decline [the] invitation to impose that heavy burden on district courts today."). That the Stipulated Protective Order "does not explicitly preclude Obergefell or her counsel from using the severance agreements to contact the 14 employees about their potential age discrimination claims against FRMC," (Doc. No. 109 at 18), does not provide a justification to modify the general (and explicit) prohibition on using confidential documents in communications with non-parties.

Next, Obergefell contends:

> employment at FRMC is a matter of public concern and FRMC's asking the 14 employees in the protected age class to sign severance agreements containing invalid OWBPA releases is of particular concern to these 14 employees. FRMC cannot use the SPO and the severance agreements to preclude Obergefell or her counsel from contacting the 14 employees because this would be against public policy.

(Doc. No. 109 at 15) (citing *Gard v. Grand River Rubber & Plastics Co.*, No. 1:20CV125, 2021 WL 75655 (N.D. Ohio Jan. 8, 2021) and *Williams v. Nex-Tech Wireless, L.L.C.*, Case No. 15-4888-SAC, 2016 WL 11468885 (D. Kan. June 23, 2016)).

But the facts of these cases are easily distinguishable from the facts here. For example, in *Gard*, the defendant sought to use a severance agreement between itself and another employee, Jason Brand, to prohibit Gard from deposing that employee. 2021 WL 75655, at *7. My colleague, Judge Barker, concluded that "to the extent the non-cooperation and non-disparagement provisions of the Severance Agreement prevent Brand from testifying about factual matters relevant to Gard's claims in the instant lawsuit, these specific provisions are void as against public policy." *Id.* at *8.

6

Judge Barker reasoned Brand's testimony was likely to lead to the discovery of information relevant to Gard's claims and, therefore, the defendant should not be permitted to inhibit Gard's case by preventing a potential witness from testifying. *Id.* Even so, Judge Barker recognized the defendant's interest in the confidentiality of the severance agreement and instructed the parties to draft a protective order which would limit the use of Brand's testimony to that case. *Id.* at *9. *See also Williams*, 2016 WL 11468885, at *3 (holding defendant could not prevent former employees from being deposed regarding plaintiffs' discrimination claims based upon severance agreements between defendant and former employees).

Ultimately, both *Gard* and *Williams* involved the courts' concern that "Defendants should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another." *Williams*, 2016 WL 11468885, at *3. That is not an issue here. Defendants have not sought to suppress evidence relevant to Obergefell's claims. Instead, Defendants seek to enforce the parties' agreed-upon conditions applicable to the use of confidential documents. Obergefell fails to show the rationale applied in *Gard* and *Williams* has any relevance to her motion to remove the confidentiality designation.

For her final argument, Obergefell contends:

> FRMC and its counsel are improperly trying to use the SPO to stop Obergefell's counsel from contacting the 14 employees in the protected class who were terminated along with Obergefell and signed severance agreements containing invalid OWBPA releases. FRMC and its counsel cannot ask this Court to read this restriction into the SPO because Obergefell's counsel could not ethically agree to such a restriction on his practice. The Ohio Board of Professional Conduct has held that **"[a] lawyer may not offer or agree to a settlement agreement that … prohibits the lawyer from the solicitation of clients with similar claims against the same defendant …"** Ohio Board of Professional Conduct Advisory Opinion 2019-04 (Issued June 13, 2019).

(Doc. No. 109 at 15-16) (emphasis in original).

This argument also is not persuasive. First, Opinion 2019-04 only discusses what an attorney can and cannot do in negotiating and entering into settlement agreements, and, at the risk

7

of stating the obvious, the Stipulated Protective Order is not a settlement agreement. Nothing in Opinion 2019-04 cannot be read to impose an ethical prohibition on an attorney's ability to stipulate to a Rule 26 protective order. Moreover, nothing in the Stipulated Protective Order prevents a party or an attorney from contacting non-parties; it simply prohibits the use or disclosure of any document designated as confidential.

Obergefell fails to show there is good cause to modify the Stipulated Protective Order to permit her attorney to use confidential documents for the purpose of communicating with the 14 former employees who entered into the severance agreements. I deny her motion.

There is one final matter to address. As Obergefell notes, Ohio Rule of Professional Conduct 5.6 states that "[a] lawyer shall not participate in offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a claim or controversy." Ohio Prof. Cond. R. 5.6(b). Opinion 2019-04 elaborates on this prohibition:

> Therefore, as a condition of settling a client's case, a lawyer may not agree to restrict his or her own practice of law or propose that opposing counsel restrict the lawyer's future practice. This prohibition equally applies to settlement provisions that seek to restrict outright the future practice of a lawyer as well as less obvious provisions that have the practical effect of limiting the lawyer's right to practice.

Opinion 2019-04 at 2.

On June 23, 2023, Mr. Newman sent defense counsel a letter stating "[b]oth you and your clients should understand the high cost of not settling this case. . . . I will use the information obtained in this case to file a class action on behalf of the other 14 employees in the protected age group who were terminated as part of FRMC's alleged 2020 RIF and were asked to sign invalid OWBPA releases." (Doc. No. 107-5 at 2). Mr. Newman informed Defendants that they had until June 30, 2023, to accept Obergefell's revised settlement demand and stated that, if they did not agree to settle, he would "file a class action on behalf of Laurie's 14 co-workers who were asked to sign invalid OWBPA releases." (*Id.* at 5). When Defendants did not accept the revised settlement

8

demand, Obergefell filed her motion to remove the confidentiality designation so that Mr. Newman could inform the 14 former employees that their severance agreements contain allegedly invalid OWBPA releases. (Doc. No. 103 at 2).

Defendants argue this course of conduct constitutes bad faith litigation practice and the unreasonable and vexatious multiplication of proceedings and request that I impose sanctions against Obergefell, Mr. Newman, or both. (Doc. No. 107 at 9-10).

Obergefell contends sanctions are inappropriate against her or her attorney and she further contends that defense counsel "has engaged in bad-faith conduct by misusing the parties' SPO to shield FRMC from . . . liability" to the other 14 former employees within the protected age class. (Doc. No. 109 at 16). Obergefell then lists seven examples of conduct she alleges was in bad faith. (*Id.* at 17-18). Nearly all of these examples involve Defendants' arguments in opposition to her motion to remove the confidentiality designations and do not demonstrate bad faith.

In the remaining example, Mr. Newman alleges defense counsel's "argument that she can use statements made by Obergefell's attorney in confidential settlement communications to show that he filed Obergefell's Motion for improper reasons is an improper attempt to circumvent the Fed. R. Evid. 408 severance privilege." (*Id.* at 17). This argument is not persuasive.

Rule 408 provides:

(a) Prohibited Uses. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

9

> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

"Since the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule." Fed. R. Evid. 408, 1972 Advisory Committee Note. Rule 408 does not prohibit use of Mr. Newman's prior statements to show a potential motivation for filing the current motion or to provide notice of certain statements contained in the settlement demand.

I have serious concerns about Mr. Newman's conduct leading up to, and including, the filing of the motion to remove the confidentiality designations. Therefore, I order Obergefell and Mr. Newman, as well as counsel for the Defendants, to attend an in-person hearing at the James M. Ashley and Thomas W. L. Ashley U.S. Courthouse, Courtroom 204, on October 11, 2023, at 1:00 p.m., concerning Defendants' request for sanctions.

## IV. Conclusion

For the reasons stated above, I deny Obergefell's motion to modify the Stipulated Protective Order. (Doc. No. 103).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

10